CMR: USAO2018R00655

```
_____ FILED _____ ENTERED
_____ LOGGED _____ RECEIVED
```

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

NOV 3 0 2018

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | Criminal No. __18-3335 ADC__ |
| v. | ) | |
| | ) | |
| **DARION GAITHER,** | ) | |
| Defendant. | ) | |

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Terence Owen Byrne III, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, hereby state the following:

### INTRODUCTION

1. Your affiant is an investigative or law enforcement officer of the United States, within the meaning of 18 U.S.C. § 2510(7), and is empowered by law to conduct investigations of and make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. Your affiant has been a Special Agent with the ATF since November 27, 2017. Your affiant has attended the Federal Law Enforcement Training Center, Criminal Investigation Training Program, and the ATF National Academy's Special Agent Basic Training Program, both located in Glynco, Georgia, for a combined period of twenty-seven (27) weeks of training. Prior to working for the ATF, your affiant worked six and half years for the Virginia State Police, enforcing criminal and traffic laws of the Commonwealth of Virginia.

3. Your affiant has received extensive formal and on-the-job training in the provisions of the federal firearms laws administered under Title 18 and Title 26 of the United States Code. Your affiant has been the case agent in numerous investigations involving violations of the federal firearms and controlled substance laws. Your affiant has received specialized training regarding, and has personally participated in, various types of investigative



activities, including, but not limited to, the following: (a) physical surveillance; (b) the debriefing of defendants, witnesses, informants, and other individuals who have knowledge concerning violations of federal firearms laws; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; (f) electronic surveillance through the use of pen registers and trap and trace devices; (g) the court-authorized interception of both wire and electronic communications (i.e., Title III wiretaps); and (h) the handling and maintenance of evidence.

4. During my tenure as a law enforcement officer, your affiant has performed controlled purchases of firearms and drugs, as well as street-level surveillance of firearm and drug transactions; utilized informants to make controlled purchases of firearms and drugs; targeted street-level and interstate firearms and narcotics traffickers; obtained and executed search warrants as a result of firearm and drug investigations; attended courses and seminars covering drug recognition, interdiction, money laundering, conspiracy investigations, and secure communications interception; and participated in Title III wiretap investigations involving federal firearms and narcotics violations. Your affiant has been involved in Organized Crime Drug Enforcement Task Force ("OCDETF") investigations involving armed drug trafficking organizations. As a result, your affiant has extensive experience in debriefing defendants and in working with confidential informants and persons with direct experience with the methods used to distribute firearms and controlled substances.

5. As a result of this training and experience, your affiant has learned about the importation, manufacture, concealment and distribution of controlled substances. Additionally, based on your affiant's training and experience and his participation in other narcotics



investigations, your affiant knows that it is common for drug dealers to be armed for the protection of themselves, their organization, and their controlled substances.

6. Through training and experience, I have also become familiar with the criminal statutes of the United States, particularly in the area of law relating to violations of the federal firearms, narcotics, and conspiracy statutes.

7. I have set forth only those facts that I believe are necessary to establish probable cause in support of this criminal complaint. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals. I herein set forth the facts showing there is probable cause to believe that, on or about June 22, 2018, **DARION GAITHER** committed the following federal offenses:

(1) Possession of a Firearm by a Person Previously Convicted of a Crime Punishable by Imprisonment of Greater Than One Year, in violation of Title 18, United States Code, Section 922(g)(1); and

(2) Possession of a Firearm During and in Relation to a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1)(A).

## **PROBABLE CAUSE**

8. On June 20, 2018, Baltimore Police Department Detective Courtney Wright applied for, and was granted, a warrant to search the person of "Davon Foster" and the premises located at 910 Bunche Road, Baltimore, Maryland. The warrant was sought after Detective Wright utilized a confidential informant (CI) to conduct a controlled purchased of drugs from an individual known as "Phats" at 910 Bunche Road. Detective Wright personally observed the

controlled buy, including the individual—a black male—known as "Phats." Based on the information available to him at the time, Detective Wright believed that "Phats'" true identity was Davon Foster.

9. The warrant was executed by Detective Wright and other members of the Baltimore Police Department at around 8:00 PM on June 22, 2018. As Detective Wright approached 910 Bunche Road, the person he knew as "Phats," and who he previously observed during the controlled purchase, was sitting in a chair on the open porch of 910 Bunche. As Detective Wright and another officer were in the process of securing "Phats," Detective Wright observed the handgrip of a pistol in "Phats'" waistband. Detective Wright secured the firearm, which turned out to be a Rohm RG14 .22 caliber handgun. The firearm was loaded with six live rounds.

10. Also during the execution of the warrant, law enforcement found, on the table located immediately inside of the front entrance of 910 Bunche, a bag containing 51 small, green zip-top bags containing a white powder substance. Lab testing of a sample of these substances confirmed that the substance was cocaine, a Schedule II controlled substance.

11. Law enforcement also recovered during the search (a) two baggies of marijuana, weighing just over nine grams; and (b) one gel capsule containing fentanyl powder.

12. During the execution of the warrant, but after "Phats" and his firearm had been secured, the police officer who reviewed "Phats" identification learned that *this* "Phats"—the individual who Detective Wright previously observed during the controlled purchase—was an individual named **Darion GAITHER**. "Phats" is apparently the nickname of both **GAITHER** and Davon Foster, the latter of whom is known by that nickname in the Westport neighborhood, only minutes from 910 Bunche Road.

4



13. A review of **GAITHER's** criminal history reveals that, prior to June 22, 2018, **GAITHER** was convicted of a crime punishable by a term of imprisonment exceeding one year. Specifically, on November 30, 2005, **GAITHER** was convicted in Maryland state court of violating Maryland State Code Section 5-602, possession with intent to distribute controlled substances. **GAITHER** was sentenced to 6 years' imprisonment, 5 years and 10 months of which was suspended. He also was sentenced to 3 years' probation.

14. The aforementioned Rohm RG14 .22 revolver was manufactured by ROHM, a company whose manufacturing facilities are located outside of the State of Maryland. Therefore, there is probable cause to believe that the firearm traveled in interstate commerce prior to its recovery by law enforcement in Maryland on June 22, 2018.

15. Based on my education, training, and experience, your affiant knows that the possession of approximately 51 baggies of cocaine is indicative of distribution, not personal use. This belief is supported by the fact of Detective Wright's previous controlled buy from **GAITHER**, which also took place at 910 Bunche Road. Accordingly, there is also probable cause to believe that **GAITHER** possessed a firearm, the Rohm RG .22 revolver, during and in relation to a drug trafficking crime, the possession with intent to distribute cocaine.

## CONCLUSION

16. Based on the aforementioned facts outlined in the affidavit, as well as the evidence recovered from **GAITHER's** residence, your affiant believes there is probable cause to believe that **DARION GAITHER** committed the following federal offenses:

(a) Possession of a Firearm by a Person Previously Convicted of a Crime Punishable by Imprisonment of Greater Than One Year, in violation of Title 18, United States Code, Section 922(g)(1); and


(b) Possession of a Firearm During and in Relation to a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1)(A).

Accordingly, the undersigned requests that the Court authorize the attached complaint for **DARION GAITHER**.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Terence Owen Byrne III
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn before me this 30th day of November, 2018.

HONORABLE A. DAVID COPPERTHITE
UNITED STATES MAGISTRATE JUDGE